UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN JOEL KRETZMER,

                Plaintiff,          Case No. 11-cv-15623
                                    Honorable Avern Cohn
                                    Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 15]

Plaintiff Steven Joel Kretzmer ("Kretzmer") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [12, 15], which have been referred to this court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

## I.      RECOMMENDATION

For the reasons set forth below, the court finds that the Administrative Law Judge's ("ALJ") conclusion that Kretzmer is not disabled under the Act is not supported by substantial evidence. Accordingly, the court recommends that the Commissioner's Motion for Summary Judgment [15] be DENIED, Kretzmer's Motion for Summary Judgment [12] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED

back to the ALJ for further proceedings consistent with this Recommendation.

## II.     REPORT

### A.     Procedural History

On September 26, 2007, Kretzmer filed applications for DIB and SSI.  (Tr. 166-77).  His applications were both denied initially on February 5, 2008.  (Tr. 69-70).  Kretzmer filed a timely request for an administrative hearing, which was held on January 28, 2010, before ALJ Jacqueline Hall-Keith.  (Tr. 737-66).  Kretzmer, who was represented by an attorney, testified at the hearing, as did vocational expert ("VE") Lawrence Zatkin.  (Tr. 737-66).  On February 17, 2010, the ALJ found that Kretzmer was not disabled.  (Tr. 74-82).  On September 10, 2010, the Appeals Council granted Kretzmer's request for review, vacated the ALJ's hearing decision, and remanded the case for further consideration of Kretzmer's mental impairments, treating and examining source opinions, residual functional capacity, credibility, and the vocational impact of the assessed limitations.  (Tr. 85-88).

ALJ Hall-Keith held a second hearing on March 1, 2011.  (Tr. 37-68).  Again, Kretzmer testified at the hearing, as did the same VE, Lawrence Zatkin.  (Tr. 42-68).  In a decision dated March 23, 2011, the ALJ again denied Kretzmer's applications for DIB and SSI.  (Tr. 10-19).  On October 21, 2011, the Appeals Council denied review.  (Tr. 1-6).  Kretzmer filed for judicial review of the final decision on December 22, 2011 [1].

### B.     Background

#### 1.     Disability Reports

In a September 26, 2007 disability field office report, Kretzmer reported that his alleged onset date was August 1, 2006.  (Tr. 192).  The claims examiner noted that Kretzmer had difficulty concentrating during their face-to-face interview and that he:

2

> . . . began shaking and became very nervous.  He appeared withdraw[n].  He was uncomfortable being in the office.  Average weight and appeared depressive.  He came into the office with his wife who assist[ed] him on keeping calm.  He had problems in remembering dates.  At one point during the interview he shut down and did not speak.  His voice became shake [sic] then by the end of the interview he was relax[ed].

(Tr. 193-194).

In an undated disability report, Kretzmer indicated that his ability to work is limited by severe depression, anxiety, panic attacks, tremors, extreme anger, agoraphobia[1], and paranoia. (Tr. 196).  When describing how these conditions limit his ability to work, Kretzmer stated, "I have terrible [panic] attacks, tremors, short term memory loss, light headedness, extreme anger, agoraphobia, paranoid."  (*Id.*).  Kretzmer reported that these conditions first interfered with his ability to work on July 1, 1990, and that he became unable to work on August 1, 2006.  (*Id.*). Since that time, he worked for one weekend at a drug store but was unable to sustain that job;[2] he can no longer work because he suffers acute panic attacks and cannot be around other people without suffering social anxiety.  (*Id.*).  Prior to stopping work, Kretzmer worked in various retail positions, primarily as a stock clerk or salesman, from approximately 1993 to 2006.  (Tr. 197).  Before that, he completed high school, one year of college, and trained at the Specs Howard School of Broadcasting.  (Tr. 202).  He indicated that he had treated with several medical providers regarding his depression, anxiety, and panic attacks.  (Tr. 199-200).  At the time of the report, he was taking several medications, including Effexor (an anti-depressant), Seroquel (an anti-psychotic), and Xanax (for panic attacks and anxiety).  (Tr. 201).  In summary, Kretzmer wrote:

---

[1] "Agoraphobia" is a "phobia of open or public places."  Stedman's Medical Dictionary 25 (2002).

[2] Kretzmer testified that he worked at CVS as a cashier for two days before he had a "freak out" and left because he could not handle the job.  (Tr. 744).

3

> I have let my driver's license expire because I shake and tremble when at stop lights. I am afraid people are staring at me. I don't like to leave the house unless I have an Easter Seals appointment. I have been released from work for screaming in a rage at my boss on the job. I am unable to mix with people and be a team player. I can only think I am in a panic and unable to concentrate on what is being said to me. At work I cannot concentrate when given directions. I get paranoid, tremble, self conscious, inability to understand directives. If criticized (mentioned above) I will fly into a rage which is uncontrollable. At home if I have to make a phone call, I have to take a sedative just to stop trembling. It doesn't matter who I am calling.

(Tr. 203).

In a function report dated October 29, 2007, Kretzmer reported that he lives in a manufactured home with his family. (Tr. 232). In the morning, he makes his children's lunches and then walks them to school, which he said was "close by." (*Id.*; Tr. 237). During the day, he might listen to his stereo, play his electronic keyboard, make himself lunch, or watch television. (Tr. 232). With his wife's help, he is able to provide at least some care for his children and pet. (Tr. 233). When asked what he could do before the onset of his condition that he is no longer able to do, Kretzmer said, "I could be around people (one on one). I could drive, I could work with one or two co-workers. I had a better appetite. I could focus on simple instructions." (*Id.*). His condition interferes with his ability to sleep, unless he takes Seroquel and Xanax. (*Id.*). Kretzmer is able to attend to his own personal care, although he showers less frequently and has stopped shaving and getting haircuts. (*Id.*). He no longer drives (because he has panic attacks, tremors, and thinks people are making fun of him) or mows the lawn (because he is "afraid people are watching and judging, making fun of [him]"), and he finds it difficult to clean and dust the house. (Tr. 233, 235). He needs reminders to trim his beard, take out the garbage, make phone calls, and take his medication. (Tr. 234). Kretzmer can prepare only sandwiches and microwaveable meals, because anything more complicated makes him "extremely jittery, frustrated, anxious when it comes to following any kind of instructions." (*Id.*). He is able to

4

walk and ride in a car, but he will not renew his driver's license because, in his words, ". . . at stop lights I think people are staring or talking about me.  Then I begin to shake, have tremors, and get very insecure & paranoid."  (Tr. 235).  He does not leave the house to go shopping.  (*Id.*).  He is unable to pay bills, handle a savings account, or use a checkbook/money orders.  (*Id.*).  His hobbies include playing his electronic keyboard, listening to music, and, occasionally, reading a book (although he finds it difficult to absorb information and concentrate).  (Tr. 236).  He visits his parents on a fairly regular basis and occasionally sends e-mails to friends, but he shakes terribly if he has to use the telephone.  (*Id.*).  He has problems getting along with family, friends, and neighbors.  (Tr. 237).

When asked to identify functions impacted by his condition, Kretzmer checked lifting, bending, standing, walking, talking, memory, completing tasks, concentration, understanding, following instructions, and getting along with others.  (*Id.*).  In explanation, Kretzmer said:

> I am out of shape.  I shake & tremor when I have to talk to anyone but my family, my memory has been downhill, I just can't concentrate enough to complete basic tasks, my panic & anxiety keeps me from understanding, following simple instructions (especially verbal), and I'm to [sic] paranoid to get along with others.

(*Id.*).  He has difficulty paying attention for more than five or ten minutes, and he is unable to finish what he starts.  (*Id.*).  While he can follow some written directions, he gets "all flustered & frustrated if given any kind of technical task."  (*Id.*).  He does not follow spoken instructions well because he is too busy concentrating on how negatively he perceives himself.  (*Id.*).  He does not get along with authority figures because of his "intense anger issues."  (Tr. 238).  He was fired from his last job "for exploding in a temper tantrum at [his] boss."  (*Id.*).  He does not handle stress or change well, and, when he goes out in public, he is always afraid that people are staring at him and making fun of him.  (*Id.*).

In an undated disability appeals report, Kretzmer reported that there had been no change

5

in his condition since his last report.  (Tr. 244).  Since the time of his last report, he had begun

receiving mental health treatment at Training and Treatment Innovations ("TTI").  (Tr. 244-45).

He was taking Klonopin (for anxiety), Metropolol (for high blood pressure), and Vytorin (for

high cholesterol).[3]  (Tr. 245).  He reported no changes in his daily activities since the time of his

last disability report, and he indicated that he could not take care of his family because of his

condition.  (Tr. 246).

### 2.   *Plaintiff's Testimony*

At the March 1, 2011 hearing before the ALJ, Kretzmer testified that his condition had

not changed since the time of his prior hearing (on January 28, 2010).  (Tr. 42-43).  At both

hearings, Kretzmer testified that, on a daily basis, he gets up in the morning and then spends

most of his day pacing back and forth from the closet to the bathroom, staring at the toilet and

the tub, and staring into the mirror.  (Tr. 43, 749-50).  Sometimes, he watches television, listens

to music, reads, uses the computer, or plays his electronic keyboard; but, he spends the vast

majority of his time either pacing or sleeping.  (Tr. 43, 49).  He testified that he is afraid to take

showers because he is afraid he will miss a bill collector calling on the phone or knocking on his

door.  (Tr. 44).  He stays in the house most of the time and does not have any friends, but he does

talk to his father and brother from time to time.  (Tr. 44-45).  Occasionally, he goes shopping

with his wife "just to get out of the house," but he does not leave the house alone, and he is

afraid to drive because he is afraid that people are laughing at him or talking about him when he

stops at a red light.  (Tr. 45-46, 753-54).  Kretzmer further testified that he receives care and

management services at TTI.  (Tr. 46).  He goes there once every two months to see the

---

[3] Other record evidence submitted by Kretzmer indicates that, at various times, he also took
several other medications, including Abilify, Cymbalta, Xanax, Paxil, and Diltiazem.  (Tr. 251,
255).

psychiatrist for his medication, and once every two weeks to see the case worker.  (*Id.*).  This is the only place he goes on a regular basis.  (*Id.*).  In terms of his activities of daily living, Kretzmer said that he does not cook, do the laundry or household chores, although he will occasionally wash dishes.  (Tr. 46-47, 754).  His anxiety level is high, he is depressed, and his tremors are consistently bad (indeed, the ALJ noted that he was shaking during the hearing).  (Tr. 48, 748-49).

When asked whether he had worked in the last year, Kretzmer said that he got a job at Salvation Army through a friend, but only worked there for a "few weeks."  (Tr. 47).  His job was to sort clothes according to style and color, but he "couldn't concentrate or work within the guidelines of the company . . . ."  (*Id.*).  Previously, he was terminated from a job because he "lost [his] temper and went off on the manager . . . ."  (Tr. 50).  When asked why he cannot work, Kretzmer said, "I tremble a lot like I'm doing now and I can't concentrate on what I'm being asked to do."  (Tr. 51).  He also cannot concentrate enough to follow directions.  (*Id.*).  He testified, however, that he did *want* to work and that he had applied for jobs at Kmart and Meijer.  (Tr. 57).

In a key portion of the hearing, the ALJ attempted to discern what had changed between the time when Kretzmer had been able to work (prior to 2006) and the present.  Specifically, she said, "I want to know what's different now that you can't keep a regular job when you kept a regular job in the past."  (Tr. 52).  Kretzmer responded by saying, "I think I've just gradually probably gotten worse over that period of time . . . .  My shaking, my trembling, my inability to comprehend what I'm being told."  (*Id.*).  When Kretzmer said that he was seeing his psychiatrist the next day, the ALJ instructed Kretzmer and his counsel to obtain a "narrative" from that psychiatrist stating "what's different.  Why all of a sudden he can't do what he's saying he can't

7

do, and why is the medication not working such that he needs to be off work as opposed to going to work for this." (Tr. 54). Kretzmer's attorney indicated that she would try to obtain such a document, although she thought it would be difficult because Kretzmer was covered by Medicaid and could not afford to pay for such a report. (Tr. 54-57).[4] She further suggested that the ALJ obtain a consultative examination of Kretzmer, but apparently one was not obtained.[5] (Tr. 58).

The ALJ then questioned Kretzmer extensively about whether he could perform night janitorial work. (Tr. 60-64). When Kretzmer indicated that he was not sure he could do this work – because he has a "hard time comprehending what people are telling [him] to do" – the ALJ again questioned why he could not do such work, when he previously had been able to work in retail environments. (Tr. 60-62). Kretzmer's attorney stepped in, and the following exchange occurred:

ALJ:        You're answering, but I want HIM to answer. That's the thrust of this.

ATTY:       And I think he did answer that. I think he said at one point that things have gotten worse and I think that's where we're at.

ALJ:        Now you just testified for him about things getting worse and if he told me that, I would probably be okay with it[6] but you've –

ATTY:       He said that –

CLMT:       I did say that.

Q. (by ALJ):  Okay. I just asked you now what was different and your attorney stepped in. I want to hear it from you. What is exactly what your

---

[4] The psychiatrist submitted the requested report (Tr. 726) the following day. *Infra* at 13.

[5] When the Appeals Council remanded the case in September 2010, it explicitly indicated that the ALJ should "obtain additional evidence concerning the claimant's impairments . . . . The additional evidence may include, if available, a consultative mental status examination . . . ." (Tr. 87).

[6] As set forth above, just a few minutes earlier, Kretzmer *had* testified: "I think I've just gradually probably gotten worse over that period of time . . . . My shaking, my trembling, my inability to comprehend what I'm being told." (Tr. 52).

8

impediment is and why can't you work?

A.          I all ready [sic] said it I'm not sure what to say anymore.

(Tr. 63-64).  With that, Kretzmer's hearing testimony abruptly concluded.

### 3.  *Medical Evidence*

#### (a)  *Treating Sources*

##### (1)  *Common Ground*

Kretzmer was first seen at Common Ground Sanctuary on August 14, 2007.  (Tr. 264).

He sought help there because his Medicaid had been discontinued, he had run out of Effexor, and

he was experiencing erratic behavior, lightheadedness, crying spells, and an altered state of

reality.  (Tr. 264, 269).  The prior day, Kretzmer had tried to harm himself by lying down in the

road and also had been seen at the Beaumont Emergency Room for "Effexor withdrawal."  (Tr.

268, 271).  On examination, Kretzmer's attitude was guarded, and he appeared moderately

depressed and anxious.  (Tr. 273-74).  His affect was labile, his associations were circumstantial,

his insight and judgment were superficial, and his attention and concentration were limited.  (Tr.

274).  His memory was intact, however, and his prognosis was "good."  (*Id.*).  He was diagnosed

with "Major depressive disorder, single, severe w/psych," assigned a GAF score of 50, and

referred to Easter Seals for further treatment.[7]  (Tr. 274-75).

##### (2)  *Training and Treatment Innovations (TTI)*

The record contains numerous treatment records from TTI between November 14, 2007

and November 22, 2010.  (Tr. 316-480).  At Kretzmer's initial intake, on November 14, 2007, it

was noted that his "despair and depression will lead to suicidal ideations at times" and that he

has destroyed property (a grill, walls in the house, doorknobs) and slammed doors when angry.

---

[7] The only medical records in evidence from Easter Seals consist of patient handouts regarding three medications:  Xanax, Effexor, and Seroqel.  (Tr. 289-94).

9

(Tr. 382).  The initial diagnosis was major depressive disorder, recurrent episode, severe, without mention of psychotic behavior and manic-depressive psychosis with a GAF score of 40.  (Tr. 389).  He was labeled "severely disabled" and evaluated as moderately limited in activities of daily living and maintaining concentration, persistence, and pace, and markedly limited in interpersonal functioning and adaptation to change.  (Tr. 390).  He was designated as a person who is "severely impaired," and the expected duration of the impairment was six months or longer, thereby making him eligible for enhanced services from TTI.  (Tr. 391).

On November 28, 2007, Kretzmer had an initial psychiatric evaluation with Dr. Sajida Mathew.  (Tr. 396-401).  He reported that he had been "fairly stable" on his medication regimen of Xanax, Effexor, and Seroquel, and that although he continued to have some symptoms of depression and anxiety, he believed the medications were helpful.  (Tr. 396).  He described a long history of anxiety, depression, and panic attacks, which had gotten worse over the past four or five years.  (*Id.*).  His insight and judgment were fair, and his mood and affect were anxious.  (Tr. 399).  Dr. Mathew's initial diagnoses included neurotic depression, generalized anxiety disorder, and agoraphobia with panic attacks.  (Tr. 400).  She assigned a GAF score of 48.  (*Id.*).  Kretzmer was continued on Effexor (at an increased dose) and Seroquel, while the Xanax was discontinued and replaced with Klonopin.  (Tr. 401).

Throughout the course of 2008, TTI progress notes indicate that Kretzmer continued to struggle with depression, anxiety, and ongoing panic attacks.  (Tr. 530-89).  Kretzmer was repeatedly characterized as "anxious," with fair or poor judgment, an "apathetic" mood, dull affect, and "angry and depressed."  (*See* Tr. 532, 534, 541, 550, 579, 588, 589).  Efforts were made throughout the year to adjust his medications and doses in order to address his symptoms, but those efforts were not entirely successful.  (*See* Tr. 461 (social anxiety persistent, Klonopin

10

increased); 459 (difficulty concentrating, Concerta added); 451 (more irritable recently, Abilify added)).   He regularly attended individual therapy sessions, and worked with a vocational specialist as well, in an effort to address his mental health issues and prepare him for reintegration into the workplace.  (*See, e.g.,* Tr. 552, 557, 567, 573).   There were times when he appeared to be improving, due to changes in his medications.  (*See e.g.,* Tr. 571 ("he's feeling much better since he began taking the Concerta")).   However, there were many other instances in which it was apparent that the medications had not improved his mental condition.  (*See e.g.,* Tr. 565 ("he has been irritable since he has been on Effexor"); 552 (describing "paranoid thoughts regarding government and aliens" while off Seroquel); 547 ("he is 'furious' all of the time" and spoke at length "about conspiracy theories and feeling that he is being controlled by the government").

In a January 26, 2009 annual evaluation, Dr. Mathew did a comprehensive review of Kretzmer's condition over the preceding year.  (Tr. 404-08).  At that time, Kretzmer reported "doing fairly well on his current medication regimen."  (Tr. 404).  His depression, anxiety, and concentration had all improved, and he denied irritability, agitation, hopelessness, suicidal thoughts, or recent panic attacks.  (*Id.*).  His insight and judgment were better.  (Tr. 407).  Dr. Mathew concluded that Kretzmer continued to suffer from dysthymic disorder, generalized anxiety disorder, and panic disorder with agoraphobia and assessed his GAF at 50.  (Tr. 408).

Over the course of 2009, little changed with respect to Kretzmer's condition.   He continued to meet with TTI's vocational specialists in an apparent effort to identify suitable employment opportunities.  Dr. Mathew continued to adjust Kretzmer's medications and dosages in the hope of stabilizing his condition.  (Tr. 316 ("klonopin has not been helpful"); 327 ("he has not noticed improvement in anxiety since starting buspar"); 447 ("concerta helps him focus, but

it disrupts his sleep"); 347 ("medications are not helping"); 440 ("urgent med review" – Lexapro discontinued and Celexa added)).  There were times when Kretzmer reported hallucinations, paranoia, and sleeping difficulties.  (Tr. 337; 495 (paranoid that "sheriff is going to come to his home and arrest the family and 'take us to an internment camp'"); 512).  He often was described as "poorly groomed and dressed," depressed, and apathetic.  (*See* Tr. 331, 335, 357, 435, 487, 489, 510).  On October 6, 2009, Kretzmer described his "overwhelming stress" and indicated that "he deals with this stress by pacing."  (Tr. 351).  And, in December, Kretzmer reported "continuing anxiety" and stated that his symptoms had increased to the point that he could not leave the house and often could not even leave his room.  (Tr. 373).

In support of Kretzmer's October 1, 2009 application to discharge his federal student loans, because of "total and permanent disability," Dr. Mathew again characterized Kretzmer's diagnoses as dysthymic disorder, generalized anxiety disorder, and panic disorder with agoraphobia.  (Tr. 597).  When asked to describe the severity of these conditions, Dr. Mathew stated:  "Steven has been feeling depressed and anxious which is disrupting at times.  He will have a hard time functioning in social and work environments."  (*Id.*).  And, with respect to Kretzmer's social and behavioral limitations, Dr. Mathew said:  "Steven has difficulty with social interactions.  He gets anxious and will have a hard time functioning adequately."  (*Id.*).  She assessed his GAF score at 48.  (*Id.*).

In terms of Kretzmer's mental condition, 2010 was not significantly different than prior years.  He continued to express a desire to work, and met regularly with TTI's vocational specialists in an effort to identify jobs that he could perform.  (Tr. 514, 517).  Indeed, he obtained a job at the Salvation Army in early June, but was "nervous" and "shaky" when talking about the job and questioned whether he would be successful, even before he started.  (Tr. 693).  Within a

12

week, Kretzmer had left the job after his supervisor told him that he needed to work more quickly. (Tr. 689). Although he continued to apply for jobs, his social anxiety had not dissipated and he expressed a desire to find a job where he had "minimal contact with people." (Tr. 652). Dr. Mathew continued to adjust his medications and dosages in the hope of stabilizing his condition, but he was still frequently described as anxious, nervous, and depressed. (Tr. 621, 625, 673, 677, 687).

On March 2, 2011, Dr. Mathew submitted a written report (requested by the ALJ at Kretzmer's hearing the previous day), in which she summarized Kretzmer's current diagnoses (dysthymic disorder, generalized anxiety disorder, and panic disorder with agoraphobia) and indicated that he was continuing to receive treatment at TTI. (Tr. 726). *See supra* at 7-8. Then, Dr. Mathew indicated as follows:

> Steve experiences on-going social anxiety which impairs social and occupational functioning. He has poor coping skills and stress tolerance. He will have difficulty interacting with coworkers, concentrating and completing tasks. Steve has not been tolerant of medications for this due to exacerbation of anxiety.
>
> Steve was previously fired because of an outburst he had toward his boss, as well as lost another job due to not being able to keep up with the responsibilities and duties the job called for.

(*Id.*).

### (b)    *Consultative and Non-Examining Sources*

### (1)    *Margaret Zerba, Ph.D.*

On January 15, 2008, Kretzmer underwent a consultative psychological examination with licensed psychologist Margaret Zerba. (Tr. 295-97). In her report, Dr. Zerba noted that Kretzmer had a tremor at the outset of the examination, and he made several self-critical statements, but after she commented that he was criticizing himself, the tremors and negative self-talk seemed to stop. (Tr. 295). She found that his insight was absent, his judgment was fair,

and he was depressed with constricted affect. (Tr. 296). His recent memory was absent on testing, although his past memory was good. (*Id.*). She concluded that he suffered from panic disorder without agoraphobia and major depressive disorder and evaluated his GAF at 50. (Tr. 297). Her prognosis was guarded. (*Id.*).

### (2)   Residual Functional Capacity Assessment

On February 5, 2008, Thomas T.L. Tsai, M.D., reviewed Kretzmer's then-available records and completed a Mental Residual Functional Capacity ("RFC") Assessment and a Psychiatric Review Technique. (Tr. 298-315). Dr. Tsai noted that Kretzmer suffers from major depressive disorder (an affective disorder as defined in Listing 12.04) and panic disorder (an anxiety-related disorder as defined in Listing 12.06). (Tr. 302, 305, 307). Dr. Tsai opined that Kretzmer was mildly limited in his activities of daily living, and moderately limited in social functioning and maintaining concentration, persistence, and pace.[8] (Tr. 312). Dr. Tsai concluded that Kretzmer could perform unskilled work. (*Id.*).

### 4.   Vocational Expert's Testimony

Lawrence Zatkin testified as an independent vocational expert ("VE"). (Tr. 64-68). The VE characterized Kretzmer's past relevant work as semi-skilled in nature, and light exertion. (Tr. 65). The ALJ asked the VE to imagine a claimant of Kretzmer's age, education, and work

---

[8] Specifically, in his RFC Assessment, Dr. Tsai opined that Kretzmer was not significantly limited in his ability to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday without interruptions from psychological symptoms; interact appropriately with the general public; ask simple questions or request assistance; get along with co-workers without distracting them; and maintain socially appropriate behavior. (Tr. 298-99). Dr. Tsai further opined that Kretzmer was moderately limited in the ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule and maintain regular attendance; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. (*Id.*).

experience, who was able to perform light unskilled work, with the following nonexertional limitations:  only limited contact with the public and occasional direction or interaction with his supervisor.  (Tr. 67).  The VE testified that the hypothetical individual would not be capable of performing Kretzmer's past relevant work.  (*Id.*).  However, the VE testified that the hypothetical individual would be capable of working in the position of Night Office Cleaner (5,000 jobs in the State of Michigan).  (*Id.*).  Upon questioning by Kretzmer's attorney, the VE further testified that if the hypothetical individual had "difficulty with persistence and pace," such a limitation could preclude employment altogether, depending on how severe the limitation was.  (Tr. 67-68).

### C.    Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work,

benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D.    The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Kretzmer is not disabled under the Act. At Step One, the ALJ found that Kretzmer has not engaged in substantial gainful activity since August 1, 2006, his alleged onset date. (Tr. 12). At Step Two, the ALJ found that Kretzmer has the severe impairments of dysthymic disorder, depression, anxiety, agoraphobia, and paranoia. (*Id.*). At Step Three, the ALJ found that Kretzmer's mental impairments, whether considered alone or in combination, do not meet or medically equal Listing 12.04 (for affective disorders), Listing 12.06 (for anxiety-related disorders), or Listing 12.08 (for personality disorders). (Tr. 12-14).

The ALJ then assessed Kretzmer's residual functional capacity ("RFC"), concluding that Kretzmer was capable of performing the full range of unskilled work at all exertional levels, but with the following nonexertional limitation: limited contact with the public and occasional interaction with supervisors. (Tr. 14-17).

At Step Four, the ALJ determined that Kretzmer is unable to perform his past relevant work, which consisted of retail sales and stocking, and which was semi-skilled in nature and

medium exertion.  (Tr. 17).  At Step Five, the ALJ concluded, based in part on the VE's testimony, that Kretzmer is capable of performing a significant number of jobs that exist in the national economy.  (Tr. 18).  As a result, the ALJ concluded that Kretzmer is not disabled under the Act.  (Tr. 19).

### E.      Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an

examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

## F.     Analysis

Kretzmer argues that the ALJ erred (1) in purportedly giving "great weight" to the opinion of his treating psychiatrist, yet failing to incorporate her limitations into the RFC; and (2) in failing to provide the VE with a hypothetical that included all of Kretzmer's credible limitations.

### 1.     The ALJ's Hypothetical Question to the Vocational Expert and Her RFC Finding Failed to Include all of Kretzmer's Credible Limitations

In her written decision, the ALJ found that "[w]ith regard to concentration, persistence or pace, [Kretzmer] has moderate difficulties." (Tr. 13). At the administrative hearing, however, the ALJ did not incorporate such a limitation into the hypothetical question she posed to VE Lawrence Zatkin, and instead asked him to imagine a claimant of Kretzmer's age, education, and work experience, who was able to perform light unskilled work, with the following

18

nonexertional limitations: only limited contact with the public and occasional direction or interaction with his supervisor.  (Tr. 67).  Based on the question presented, the VE testified that the hypothetical individual would be capable of working in the position of Night Office Cleaner (5,000 jobs in the State of Michigan).  (*Id.*).  As a result, the ALJ concluded that Kretzmer was not disabled under the Act.  (Tr. 18-19).

Ample evidence supports the ALJ's finding that Kretzmer had "moderate difficulties" with regard to concentration, persistence or pace.  (Tr. 13).  In reaching this conclusion, the ALJ cited to Kretzmer's initial intake notes from TTI, dated November 14, 2007, in which he was evaluated as moderately limited in activities of daily living and maintaining concentration, persistence and pace, and markedly limited in interpersonal functioning and adaptation to change.  (*Id.*, citing Tr. 390).  In Dr. Mathew's March 2, 2011 report (requested by the ALJ during Kretzmer's hearing, *supra* at 7-8), she specifically stated:   "[Kretzmer] will have difficulty interacting with coworkers, *concentrating and completing tasks*."  (Tr. 726) (emphasis added).  Moreover, Kretzmer testified at the hearing that he worked briefly at the Salvation Army but could not maintain that job because he could not concentrate.  (Tr. 47-48, 521).  And, finally, Dr. Tsai – whose RFC assessment the ALJ explicitly credited – also found Kretzmer moderately limited in maintaining concentration, persistence and pace.  (Tr. 312).

An ALJ may rely on the testimony of a vocational expert to determine whether jobs would be available for an individual who has workplace restrictions.  *See Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  However, in order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of a conclusion that the claimant can perform other work, the question must accurately portray the claimant's physical and mental impairments.  *See Ealy v. Comm'r of Soc. Sec.*, 594

F.3d 504, 516 (6th Cir. 2010). Where the hypothetical question fails to reflect each of the claimant's limitations that are supported by substantial evidence, the vocational expert's answer has no evidentiary value. *See Paden v. Barnhart*, 92 F. App'x 465, 468 (9th Cir. 2004). In this case, where the ALJ specifically found that Kretzmer is moderately limited in concentration, persistence and pace, she was required to include such a limitation in the hypothetical question presented to the VE.

Courts considering this specific issue have held that, "The failure to account for deficiencies in concentration, persistence and pace in the hypothetical question constitutes reversible error." *Allen v. Commissioner of Soc. Sec.*, 2010 WL 3905983, at *5 (E.D. Mich. June 2, 2010) (citing *Bankston v. Commissioner of Soc. Sec.*, 127 F. Supp. 2d 820, 826 (E.D. Mich. 2000)); *see also Badour v. Commissioner of Soc. Sec.*, 2011 WL 3320872, at *7 (E.D. Mich. July 18, 2011) ("The failure to account for moderate concentrational deficiencies constitutes reversible error."). In *Allen*, the court addressed a situation very similar to the one at hand, where the ALJ had found the claimant moderately limited with respect to concentration, persistence and pace, but had failed to include such a limitation in the hypothetical presented to the VE. In that case, the court noted that the record evidence, viewed as a whole, "might suggest that substantial evidence would support the conclusion that Plaintiff experienced only mild or non-existent concentrational problems." *Id.* The court then said:

> The problem here is that the ALJ found explicitly that Plaintiff experienced moderate deficiencies in concentration, persistence, and pace. Despite this determination, he made no reference whatsoever to concentrational limitations in the hypothetical question. The VE's job findings, made in response to an incomplete set of limitations (by the ALJ's own account) does not constitute substantial evidence.

*Id.*

The non-exertional limitation contained in the ALJ's hypothetical ("only limited contact

with the public and occasional direction or interaction with a supervisor") is insufficient because it does not encompass Kretzmer's "moderate difficulties" with concentration, persistence or pace. "While the ALJ need not use talismanic language or the phrase 'moderate deficiencies in concentration, persistence, and pace' in the hypothetical to avoid remand, 'unskilled work,' or 'simple work' are generally insufficient to account for moderate concentrational impairments." *Badour*, 2011 WL 3320872, at *7 (internal citations omitted). Moreover, "Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient" to address limitations with respect to concentration, persistence, and pace. *Green v. Commissioner of Soc. Sec.*, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009); *see also Hicks v. Commissioner of Soc. Sec.,* 2011 WL 6000714, at *7-8 (E.D. Mich. Aug. 30, 2011).

In sum, the ALJ explicitly concluded that Kretzmer is moderately limited with respect to maintaining concentration, persistence and pace. (Tr. 13). However, she failed to include this limitation in both her RFC finding and in the hypothetical question she posed to the VE. (Tr. 14, 67). The inclusion of the nonexertional limitation restricting Kretzmer to "limited contact with the public and occasional interaction with supervisors" is simply insufficient to account for Kretzmer's difficulties with respect to concentration, persistence and pace.[9]

### 2.    *Remand is Appropriate*

Upon questioning by Kretzmer's attorney, the VE testified that if the hypothetical individual had "difficulty with persistence and pace," such a limitation could preclude employment altogether, depending on how severe the limitation is. (Tr. 67-68). Under the facts of this case, the court cannot determine whether Kretzmer's moderate limitation with respect to

---

[9] This is not to say that properly evaluating and accounting for Kretzmer's concentration, persistence and pace difficulties in the RFC and VE hypothetical will necessarily lead to a different result in this case. It may or may not. Whatever the result, Kretzmer is entitled to a full and fair evaluation of the matter.

concentration, persistence and pace would preclude all employment, since the VE testified that this issue was one of degree.  Therefore, the court recommends that the case be remanded to the ALJ for inclusion of this limitation in Kretzmer's RFC determination,[10] as well as the formulation of an appropriate hypothetical question.[11]

## III.   CONCLUSION

For the foregoing reasons, the court RECOMMENDS that the Commissioner's Motion for Summary Judgment [22] be DENIED, Kretzmer's Motion for Summary Judgment [14] be

---

[10] In its September 10, 2010 Order of Remand, the Appeals Council specifically directed the ALJ to "explain the weight given" to Kretzmer's treating and examining source opinions.  (Tr. 87).  In her decision following remand, the ALJ stated the following, with respect to the opinions of Kretzmer's treating psychiatrist: "Dr. Mathew's opinions regarding the claimant's anxiety and social functioning are given great weight due to her long treatment history with the claimant.  Dr. Mathew's opinions have been directly accounted for and incorporated into the RFC set forth above."  (Tr. 16).  As set forth above, however, it is not clear that Dr. Mathew's opinions were, in fact, given "great weight," because Dr. Mathew's conclusion that Kretzmer "will have difficulty [] concentrating and completing tasks" was not incorporated into the RFC.  (Tr. 726).  On remand, the ALJ should incorporate into both her RFC finding and any hypothetical question posed to a VE, the opinions of Dr. Mathew, to which she purportedly gave "great weight."  In light of the foregoing, the ALJ should also re-evaluate her decision that "Dr. Tsai['s] opinions are given great weight because of … the fact that they are consistent with the treatment records as a whole," many of which post-date his February 5, 2008 report.  (Tr. 16; 298-315).  *See Blakely v. Commissioner of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (requiring ALJ to explain decision to give greater weight to a non-examining opinion that is not based on a review of a complete case record, *i.e.*, where that opinion pre-dated a substantial portion of the medical evidence) (citing *Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)).

[11] In addition, the ALJ gave "little weight" to Kretzmer's hearing testimony.  (Tr. 17).  However, in deeming Kretzmer less than credible, the ALJ mischaracterized the record in several respects.  For example, the ALJ dismissed Kretzmer's testimony that he spends most of the day pacing, saying that Kretzmer's treatment records "make no mention of worry, pacing, or trembling." (*Id.*).  However, the very records cited by the ALJ in support of this conclusion indicate that Kretzmer "continues to have overwhelming stress and states he deals with this stress by pacing." (Tr. 351).  One of Dr. Zerba's treatment records reflected that Kretzmer had a tremor at the outset of the examination, but she was apparently able to help him control it rather quickly.  (Tr. 295).  On remand, the ALJ should ensure that her credibility determinations are consistent with the entire record and the weight of the relevant evidence.  *See Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 248-49 (6th Cir. 2007).

GRANTED IN PART, the ALJ's decision be REVERSED, and this case be REMANDED for further proceedings consistent with this Recommendation.

Dated: November 2, 2012                    s/David R. Grand
Ann Arbor, Michigan                        DAVID R. GRAND
                                           United States Magistrate Judge


## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 2, 2012.

                                           s/Felicia M. Moses
                                           FELICIA M. MOSES
                                           Case Manager